IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 22, 2010

## ANTONIO D. RICHARDSON v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2003-B-1458     Steve Dozier, Judge**

_____

**No. M2009-01542-CCA-R3-PC - Filed February 28, 2011**

_____

Petitioner, Antonio D. Richardson, appeals from the trial court's order denying his petition for post-conviction relief. Petitioner asserts that his counsel provided constitutionally ineffective assistance. After a thorough review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the Court, in which JERRY L. SMITH and J.C. MCLIN, JJ., joined.

Dwight E. Scott, Nashville, Tennessee, for the appellant, Antonio D. Richardson.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and Rachel Sobrero, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

### I. Background

As the result of one criminal episode involving the attempted robbery of a Calhoun's restaurant in Nashville, Petitioner was indicted by the Davidson County Grand Jury and charged with three counts of especially aggravated kidnapping, one count of attempted especially aggravated robbery, two counts of aggravated assault, and one count of burglary. Prior to a jury trial, Petitioner entered a guilty plea, without a negotiated plea agreement, to the charge of attempted especially aggravated robbery. All of the remaining charges were tried by a jury, which convicted Petitioner as charged as to each offense, except as to one of

the aggravated assault charges, which resulted in a reckless endangerment conviction. The trial court merged two of the especially aggravated kidnapping convictions. On appeal, the Court of Criminal Appeals granted relief to the extent that the two remaining especially aggravated kidnapping convictions were reversed and the charges dismissed, because they violated Petitioner's due process rights in light of his conviction of attempted especially aggravated robbery. *State v. Antonio D. Richardson*, No. M2005-01161-CCA-R3-CD, 2006 WL 1173168 (Tenn. Crim. App. at Nashville, filed May 4, 2006), *perm. to app. granted* (Tenn., Jan. 29, 2007). The Tennessee Supreme Court reversed the Court of Criminal Appeals and reinstated the convictions. *State v. Richardson*, 251 S.W.3d 438 (Tenn. 2008).

## II. Trial

The facts at trial were summarized by our Supreme Court in the direct appeal as follows:

Allison Howell ("Howell") and Johnnie Lucas ("Lucas") were managers at a Calhoun's restaurant in Nashville. [Petitioner] was a line cook for the restaurant. On January 12, 2003, both managers were on duty. [Petitioner] finished his shift and watched football games in the restaurant from mid-afternoon until late in the evening. At some point that evening, [Petitioner] went into the bathroom and waited for the restaurant to close. After the restaurant closed for the night, Lucas went upstairs to the manager's office located directly above the kitchen and deposited the night's receipts in the office safe. Shortly thereafter, [Petitioner], wearing a ski mask and white latex gloves, emerged from an employees' bathroom under the stairway. He moved past two kitchen employees, grabbed Howell, put a gun to her head, and pushed her up the stairs toward the manager's office.[] He asked Howell who was in the office, and Howell replied that Lucas was there. [Petitioner] took Howell past the office door to a partially caged area in the stock room. He struck Howell in the head with the gun, injuring her and causing her to fall to the floor.

[Petitioner] went to the office door and knocked on it. When Lucas opened the door, [Petitioner] pointed his gun at her and pushed her to the floor. [Petitioner] asked her where the money was, and Lucas replied that she had already put it in the safe. [Petitioner] dragged Lucas to the safe and demanded that she open it. Lucas testified that the safe was very old and difficult to open. While Lucas attempted unsuccessfully to open the safe, [Petitioner] struck her repeatedly with a metal three-hole punch. Lucas sustained injuries to her head and hand from the beating. At some point, [Petitioner] asked

Lucas for the combination to the safe, which Lucas provided. When Lucas continued to fail in her attempts to open the safe, [Petitioner] threatened to shoot her. [Petitioner] then straddled Lucas as she lay on the floor, striking her repeatedly with the gun. Howell testified that she could hear [Petitioner] beating Lucas for approximately twenty minutes.

While [Petitioner] and Lucas were in the office, [Petitioner]'s accomplice [] went to the stock room and bound Howell's hands behind her with duct tape. Later, the accomplice returned to the stock room and asked Howell for the safe combination. He returned to the manager's office with that information.

[Petitioner] dragged Lucas by her hair to the "fan room," a little-used room through which the exhaust fans are vented. There, he struck Lucas in the face with the gun, severing her right optic nerve and causing the loss of her eye. Before leaving, [Petitioner] threatened to kill Lucas if she moved. [Petitioner] and his accomplice were apparently unable to open the safe and left the restaurant without obtaining any money.

Lucas left the fan room and found Howell lying in the caged area of the stock room. Lucas helped Howell stand and assisted in removing the duct tape from her hands. They briefly returned to their prior positions after hearing a noise. After a short time, Howell and Lucas ran to the unoccupied office and locked the door. They called 911 and hid under the desk to wait for the police.

When the police arrived, they found [Petitioner] hiding in the bushes outside the restaurant. He was covered in blood. The police also found a ski mask, a bloody white latex glove, and a bloody gun with a broken grip in the bushes where [Petitioner] was found. [Petitioner] admitted to being involved in the robbery. [Petitioner] told the police that he struck Howell to knock her out and prevent her from calling the police. He also stated that his accomplice struck Lucas in the fan room "to shut her up." The accomplice was never found.

*State v. Richardson*, 251 S.W.3d 438, 439-440 (Tenn. 2008)

## III. Post-Conviction Hearing

Petitioner testified at the post-conviction hearing that his trial counsel did discuss the *State v. Anthony*, 817 S.W.2d 299 (Tenn. 1991) due process issue regarding dual convictions

for both attempted especially aggravated kidnapping charges. Petitioner testified, however, that his counsel provided ineffective assistance of counsel because there was no discussion about whether constitutional double jeopardy protections were implicated. Petitioner also complained that his counsel failed to address double jeopardy arguments to the trial and appellate courts. In Petitioner's testimony, his sole complaint of ineffective assistance constituted his trial and appellate counsels' failure to raise the argument that the convictions for especially aggravated kidnapping were barred by double jeopardy prohibitions once he had pled guilty to attempted especially aggravated robbery. The following testimony expresses Petitioner's complaints:

Q Did [counsel] discuss the <u>Anthony</u> due-process issues with you, either prior to or after the trial?

A Yes, we discussed the <u>Anthony</u> issues.

Q Did you discuss with [trial counsel] - - or did you bring up the double-jeopardy issues at your - -

A No, not at that time. I had no ideas about the double jeopardy.

Q What's - - what is your understanding of - - of the double-jeopardy issue that - - that shoulda [sic] been raised by [trial counsel], and which you claim was not raised?

A Well, my issue is, after I pled guilty to attempted especially-aggravated robbery and they convicted me of [ ] especially-aggravated kidnappings, which I feel that both of them had the same elements, far as using a deadly weapon and serious body [sic] injury.

So, I feel, if I have pled guilty to attempted especially-aggravated robbery, I feel that that was double jeopardy that they put me under claims for especially-aggravated kidnapping.

I feel that they shoulda [sic] broke it down to kidnapping, but - - but not especially-aggravated kidnapping.

Q And why is that? Would you - - is it because of the elements of those crimes?

A As to the elements of serious body [sic] injury and also the use of deadly weapon, which I pleded [sic] guilty for.

Q Well, what about the elements of - - of false imprisonment, that's involved in the attempt - - in the especially-aggravated kidnapping, and the element of robbery, in the attempted especially-aggravated robbery? Do you think those elements are the same?

A Robbery and kidnapping?

Q Um-hum (affirmative).

A Apparently not, no.

Q Okay. Well, how do you explain - - how do you explain what your complaint is about, this - - about their failure to bring up the double-jeopardy claim? How do you explain that, sir?

A Well, if [trial counsel] [has] knowledge in it, he shoulda [sic] brought it to my attention, that I was getting punished for multiple crimes that - - you know - - if it was all outta [sic] one issue.

Q Okay.

A That he coulda [sic] protected me for in that situation.

Q Okay. And is there anything else that you would like to add, to explain this to the Court?

A No. I just wanted to know - - like I say, I pleded [sic] guilty to attempted 'specially-aggravated robbery and I felt like the multiple charges as especially [ ] aggravated [sic] kidnapping is - - like I say, is the same elements, far as the use of deadly weapon and serious body injury.

I felt like I took my responsibility, pled guilty to it.

Petitioner had different counsel at trial and on appeal, but both were employed by the public defender's office. Trial counsel testified that he met with Petitioner at least eleven times prior to trial in addition to other communications with Petitioner by phone or letter.

Trial counsel acknowledged that he did not specifically argue that double jeopardy principles prohibited the convictions for especially aggravated kidnapping.

Appellate counsel acknowledged that she did not argue on appeal that the especially aggravated kidnapping convictions violated Petitioner's right not to be subjected to double jeopardy in light of his prior guilty plea to attempted especially aggravated robbery. It was her opinion that a double jeopardy claim would have no merit.

At the conclusion of the evidentiary hearing, the post-conviction court took the matter under advisement. The trial court subsequently entered an order denying relief. In it, the trial court accredited the testimony of appellate counsel and the testimony of trial counsel that he met with Petitioner several times and discussed the evidence and different trial defense options with Petitioner. The crux of the post-conviction court's ruling, however, was that Petitioner failed to show that he was prejudiced by his counsels' decision to not raise a double jeopardy claim.

## IV. Analysis

To sustain a petition for post-conviction relief, a petitioner must prove his or her factual allegations by clear and convincing evidence at an evidentiary hearing. *See* Tenn. Code Ann. § 40-30-110(f); *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999). Upon review, this Court will not reweigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the post-conviction judge, not the appellate courts. *See Momon*, 18 S.W.3d at 156; *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997). The post-conviction judge's findings of fact on a petition for post-conviction relief are afforded the weight of a jury verdict and are conclusive on appeal unless the evidence preponderates against those findings. *See Momon*, 18 S.W.3d at 156; *Henley*, 960 S.W.2d at 578.

The Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee a criminal defendant the right to representation by counsel. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Both the United States Supreme Court and the Tennessee Supreme Court have recognized that the right to such representation includes the right to "reasonably effective" assistance, that is, within the range of competence demanded of attorneys in criminal cases. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Burns*, 6 S.W.3d at 461; *Baxter*, 523 S.W.2d at 936.

A lawyer's assistance to his or her client is ineffective if the lawyer's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. This overall standard is comprised of two components: deficient performance by the defendant's lawyer and actual prejudice to the defense caused by the deficient performance. *Id*. at 687; *Burns*, 6 S.W.3d at 461. To demonstrate prejudice, a defendant must show "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The defendant bears the burden of establishing both of these components by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); *Burns*, 6 S.W.3d at 461. The defendant's failure to prove either deficiency or prejudice is a sufficient basis upon which to deny relief on an ineffective assistance of counsel claim. *Burns*, 6 S.W.3d at 461; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996).

In evaluating a lawyer's performance, the reviewing court uses an objective standard of "reasonableness." *Strickland*, 466 U.S. at 688; *Burns*, 6 S.W.3d at 462. The reviewing court must be highly deferential to counsel's choices "and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462; *see also Strickland*, 466 U.S. at 689. The court should not use the benefit of hindsight to second-guess trial strategy or to criticize counsel's tactics*, see Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982), and counsel's alleged errors should be judged in light of all the facts and circumstances as of the time they were made, *see Strickland*, 466 U.S. at 690; *Hicks v. State*, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998).

A trial court's determination of an ineffective assistance of counsel claim presents a mixed question of law and fact on appeal. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). This Court reviews the trial court's findings of fact with regard to the effectiveness of counsel under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise. *Id*. "However, a trial court's *conclusions of law*—such as whether counsel's performance was deficient or whether that deficiency was prejudicial—are reviewed under a purely *de novo* standard, with no presumption of correctness given to the trial court's conclusions." *Id*. (emphasis in original).

The most direct manner to review the post-conviction court's decision is to determine whether, in fact, a double jeopardy claim would have been meritorious if it had been argued in the trial court and on appeal. If that issue has no merit, then Petitioner clearly failed to show prejudice. Petitioner's argument is that once he pled guilty to the charge of attempted especially aggravated robbery, the convictions for especially aggravated kidnapping of the two employees of Calhoun's restaurant were barred by double jeopardy principles.

In *State v. Denton*, 938 S.W.2d 373 (Tenn. 1996) our Supreme Court set forth the test for determining whether multiple convictions (in the case *sub judice* attempted especially aggravated robbery and especially aggravated kidnapping) violate constitutional prohibitions against double jeopardy in Tennessee under our State Constitution, Article I, § 10. The federal constitutional double jeopardy protection is more restrictive against a defendant. *Denton*, at 381, fn 15.

In *Denton* the supreme court held,

> In sum, resolution of a double jeopardy punishment issue under the Tennessee Constitution requires the following: (1) a *Blockburger* [*v. United States*, 284 U.S. 299, 52 S. Ct. 180 (1932)] analysis of the statutory offenses; (2) an analysis, guided by the principles of *Duchac* [*v. State*, 505 S.W.2d 237 (Tenn. 1973)], of the evidence used to prove the offenses; (3) a consideration of whether there were multiple victims or discrete acts; and (4) a comparison of the purposes of the respective statutes. None of these steps is determinative; rather the results of each must be weighed and considered in relation to each other.

*Denton*, 938 S.W.2d at 381.

The "*Blockburger*" test is:

> [W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

*Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 182 (1932).

The elements of attempted especially aggravated robbery are as follows:

Especially aggravated robbery is:

    (a)    the intentional or knowing theft of property from the person of another by violence or putting the person in fear; and

    (b)    accomplished with a deadly weapon; and

(c)     the victim suffers serious bodily injury.

T.C.A. §§ 39-13-403 and 39-13-401

"Attempt" is defined as:

(a) A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense:

(1) Intentionally engages in action or causes a result that would constitute an offense, if the circumstances surrounding the conduct were as the person believes them to be;

(2) Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; or

(3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.

T.C.A. § 39-12-101

The elements of especially aggravated kidnapping are as follows:

Especially aggravated kidnapping as pertinent to the case *sub judice* is:

(a)     knowingly removing or confining another unlawfully so as to interfere with the other's liberty; and

(b)     it is accomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon; or

(c)     the victim suffers serious bodily injury

T.C.A. §§ 39-13-305 and 39-13-302

Petitioner was convicted of the especially aggravated kidnapping of Ms. Howell based upon the element of a deadly weapon being involved. Petitioner was indicted and convicted of the especially aggravated kidnapping of Ms. Lucas on both theories, but the two convictions were merged together.

Especially aggravated kidnapping requires proof of an unlawful removal or confinement of the victim by the defendant, and this element is not present in the crime of attempted especially aggravated robbery. Also, especially aggravated robbery requires proof of theft from the victim, an element not contained in especially aggravated kidnapping.

In *Duchac*, it is stated that the test "is whether the same evidence is necessary to prove both offenses." *Duchac*, 505 S.W.2d at 241. Petitioner's specific argument is that his conviction for the especially aggravated robbery of *Ms. Lucas* bars his convictions for especially aggravated kidnapping convictions of Ms. Lucas *and* Ms. Howell. Since Petitioner was not charged with or convicted of especially aggravated robbery of Ms. Howell, the *Duchac* test does not indicate double jeopardy implications. Furthermore, as to the convictions pertaining to Ms. Lucas, our Supreme Court in Petitioner's direct appeal concluded that "[t]he confinement of [Ms.] Lucas to the office and her movement and confinement to the fan room also were beyond that necessary to consummate the attempted especially aggravated robbery." *Richardson*, 251 S.W.3d at 445. Also, the attempted especially aggravated robbery convictions required evidence as to the attempt to commit theft, which was not required to prove especially aggravated kidnapping. Thus, the *Duchac* test does not indicate double jeopardy problems.

There were two victims (Ms. Lucas and Ms. Howell) of especially aggravated kidnapping and only one of these victims (Ms. Lucas) was also a victim of attempted especially aggravated robbery. As noted above, however, the elements of especially aggravated kidnapping and attempted especially aggravated robbery, while having some common elements, (use of a deadly weapon and/or serious bodily injury) still constitute distinct offenses with different purposes. One prohibits people from theft of property by use of a deadly weapon and where the victim suffers serious bodily injury. The other focuses upon the prohibition of false imprisonment of a person which results in serious bodily injury or is accomplished by a deadly weapon or an article fashioned as a deadly weapon.

We conclude that had Petitioner's trial counsel and appellate counsel asserted that his guilty plea to attempted especially aggravated robbery of Ms. Lucas barred on double jeopardy grounds the prosecution of and the convictions for especially aggravated kidnappings of Ms. Lucas and Ms. Howell, Petitioner would clearly have not been granted relief. Accordingly, we conclude that Petitioner failed to prove prejudice, and under the

unique facts of this case, necessarily failed to prove deficient performance by his counsel. Petitioner is not entitled to relief in this appeal.

## CONCLUSION

The judgment of the post-conviction court is affirmed.

_____
THOMAS T. WOODALL, JUDGE